DENVER & R. G. R. CO. v. PUBLIC UTILITIES COM- MISSION OF UTAH.

No. 3164.    Decided April 5, 1918.    (172 Pac. 479.)

1. RAILROADS—PUBLIC SERVICE COMMISSIONS—POWERS—STATUTES— CONSTRUCTION. In view of Public Utilities Act (Laws 1917, c. 47) art. 5, section 34, repealing all acts or parts of acts inconsistent therewith, the Public Utilities Act provides the exclusive method of regulation, control, and license of the use of grade crossings by railroads, regulated in article 4, section 14, thereof. (Page 627.)

2. RAILROADS—PUBLIC SERVICE COMMISSION—POWERS—STATUTES— CONSTRUCTION. In view of Public Utilities Act, art. 4, section 14, giving the commission exclusive power to prescribe manner and terms of installation operation, maintenance, use, and protection of a crossing of a public road by a railroad or of a street by a railroad, the commission had power and it was its duty to act on an applica- tion of a railroad to cross a city street, although the commission had made a rule against granting a license to cross a street, unless the municipality had granted its franchise therefor, and no such franchise had been acquired. (Page 627.)

Original proceedings in mandamus by the Denver & Rio Grande Railroad Company against the Public Utilities Com- mission of Utah.

WRIT GRANTED.

*Van Cott, Allison & Riter* for plaintiff.

*Wm. H. Folland,* City Attorney, and *H. H. Smith* and *Walter Little,* Asst. City Attys., for respondent.

McCARTY, J.

The Denver & Rio Grande Railroad Company, hereinafter called petitioner, filed in this court a petition for an alternative writ of mandamus against the Public Utilities Commission of Utah, hereinafter called commission. The petition recites that petitioner is a railroad corporation organized under the laws of Utah and Colorado and is the owner and operator, as a common carrier of freight and passengers for hire, of numerous lines of railroad in each of the states named and is about to construct a new standard gauge railroad track about one and one-fourth miles in length from its yards immediately south of Twenty-First South street in Salt Lake County, Utah, to its freight yards in Salt Lake City; that it already has a double main line track between these points, one designated the east-bound and the other the west-bound track; that these tracks are inadequate, and that a new track is necessary to enable petitioner to carry on its business; that the proposed new track will be laid parallel to and west of the present east-bound main line at a distance of sixteen feet from center to center; that it will cross at grade and at right angles Twenty-First South street in Salt Lake County, and Thirteenth and Seventeenth South streets in Salt Lake City. The petition further recites that petitioner already owns property used as a right of way fronting on the streets mentioned where its present two tracks and its proposed new track cross; that its frontage on the north side of Thirteenth South street is 185 feet and on the south side 200 feet; that both on the north and south sides of Seventeenth South street its frontage is 200 feet, and on the north side of Twenty-First South street 100 feet, while on the south side of the last-named street its frontage is 2,620 feet; that the present tracks cross these streets within the limits of the frontage mentioned and the proposed new track will also cross these streets within the limits of the

frontage; that the new track will be used for the movement of freight trains between the yards above mentioned. It is further recited that freight trains moving to Salt Lake from the direction of Denver, Colo., will first enter the yards south of Twenty-First South street, where they will be broken up and cars reclassified and rearranged; that the cars will then be made up into new trains and moved over this track to Salt Lake City freight yards, and that, vice versa, trains moving from Salt Lake City in the direction of Denver will enter the yard south of Twenty-First South street, and, after reclassification and rearrangement, will move on to final destination. It is further recited in the petition that "petitioner has neither secured nor applied for a franchise from the board of county commissioners of Salt Lake County to construct the proposed new track over and across Twenty-First South street, and has neither secured nor applied for a franchise from the board of commissioners of Salt Lake City to construct the same over and across Thirteenth and Seventeenth South streets"; that on October 5, 1917, petitioner made written application to the commission for a permit to construct at grade the proposed new track over and across said streets at right angles thereto under chapter 47, section 14, art. 4, Laws Utah 1917, commonly called the "Public Utilities Act"; that the commission refused to assume jurisdiction and declined to pass upon the application one way or the other, taking the position that a franchise from the local authorities is necessary.

An alternative writ of mandamus was issued on the petition, and the commission answered admitting that petitioner had applied to it for a grade crossing permit as stated in the petition, but alleged: (a) That "this commission has adopted a rule to the effect that before grade crossing permits will be isued a copy of the franchise or consent of the local authorities authorizing the construction of the railway track, whether spur track or main, must be submitted in connection with the petition"; (b) that "petitioner, on presenting its petition before the Public Utilities Commission of Utah, failed and refused to attach any copy of franchise or consent of local authorities to its petition in compliance with the rule of said

commission, and continued so to refuse when advised by said commission that no permit would be issued until such time as a copy of the franchise authorizing the construction of such railroad track was filed with said petition.''

The Public Utilities Act reads, so far as material here, as follows:

Sec. 1. (Art. 2.) ''*   *   *   (m) The term 'common carrier' when used in this act, includes every railroad corporation; *   *   *   (aa). The term 'public utilities,' when used in this act, includes every common carrier.''

Sec. 1. (Art. 4.) ''The commission is hereby vested with power and jurisdiction to supervise and regulate every public utility in this state, as defined in this act, and to supervise all the business of every such public utility in this state, and to do all things, whether herein specifically designated, or in addition thereto, which are necessary or convenient in the exercise of such power and jurisdiction.''

Sec. 14. (Art. 4.) '' (a) No track or any railroad shall be constructed across a public road, highway or street at grade, *   *   *   without having first secured the permission of the commission: Provided, that this subsection shall not apply to the replacement of lawfully existing tracks. The commission shall have the right to refuse its permission or to grant it upon such terms and conditions as it may prescribe. (b) The commission shall have the exclusive power to determine and prescribe the manner, *   *   *   and the terms of installation, operation, maintenance, use and protection of each crossing of one railroad by another railroad or street railroad, and of a street railroad by a railroad and of each crossing of a public road or highway by a railroad *   *   *   and of a street by a railroad. *   *   *''

Sec. 34 (Art. 5.) ''Sections 454, 455, and 456, Compiled Laws of Utah 1907, and all acts or parts of acts inconsistent with the provisions of this act are hereby repealed.'' (The repeal of these sections is important.)

It will be noticed that the act confers on the commission the exclusive power to prescribe the manner and the terms upon which railroad tracks may be constructed, maintained, and

operated across a public road, highway, or street, and that
"no track or railroad shall be constructed across a public road,
highway or street at grade   *   *   *   without having first se-
cured the permission of the commission."

Counsel for the respective parties have confined their con-
sideration of the case to a review of the history of the legisla-
tion and to a discussion of the construction which they
claim should be given the statutes giving railroad com-    1, 2
panies the right to construct, maintain, and operate rail-
way lines and tracks in the state, and of the power heretofore
conferred on municipal corporations by statute to regulate
the use of streets and to withhold or grant franchises to rail-
road companies to lay, maintain, and operate railroad tracks
on and across the public streets within the municipalities.
The scope and extent of the power of the commission under
the act, and the effect of the act on the statutes referred to, is
not discussed or even referred to in their briefs. Counsel seem
to take it for granted, and to have discussed the case on the
theory, that no parts of the statutes in force at the time the
act went into effect, giving railroads the right to occupy and
cross roads, highways, and streets, are repealed or abrogated
by the act except the sections specifically mentioned in the
repealing clause. Not only are the sections of the statute spe-
cifically mentioned in the act repealed, but "all acts and parts
of acts inconsistent with the provisions of this act" are re-
pealed. Since the act, in language so plain that it will admit
of but one construction, confers on the commission the exclu-
sive power to determine and prescribe the manner, and the
terms upon which railroad companies may construct, main-
tain, and operate railroad tracks across public roads, high-
ways, and streets within the state and repeals all acts and
parts of acts inconsistent with the provisions conferring such
power, but little need or can be said on the subject, except that
the commission erred in declining to act on the application
made by the petitioner for crossing permits. This decision is
not intended to, and does not, declare or establish any rule
regarding the course necessary for street railroad companies
to take in order for them to get permission and to entitle them

to construct, maintain, and operate street railway lines on and across the public streets of cities and incorporated towns.

It is ordered that a peremptory writ of mandamus issue requiring and directing the commission, after making, within a reasonable time, such investigation, if any, as it may deem necessary in the premises, to act on petitioner's petition for crossing permits and to either grant or refuse them.

FRICK, C. J., and CORFMAN, THURMAN, and GIDEON, JJ., concur.