# UNION PAC. R. CO. et al. v. PUBLIC SERVICE COMMISSION.

No. 6556.   Decided February 26, 1943.   (134 P. 2d 469.)

*George H. Smith, Robert B. Porter, W. Hal Farr,* and *Judd, Ray, Quinney & Nebeker,* all of Salt Lake City, and *George S. Barker,* of Ogden, for plaintiffs.

*J. A. Howell,* of Ogden, amicus curiae.

*Grover A. Giles,* Atty. Gen., *Calvin Rampton,* Deputy Atty. Gen., and *George H. Lowe* and *Ira A. Huggins,* both of Ogden, for defendant.

BAKER, District Judge.

On the 7th day of October, 1942, this court upon joint application of the plaintiffs and in exercise of its original jurisdiction issued an alternative writ of prohibition directed to the defendant, Public Service Commission of the State of Utah, hereinafter called the Commission, ordering said defendant to show cause why it should not be restrained and prohibited from proceeding with an investigation initiated by it of the right of the plaintiff railroad companies to remove a certain railway track and trolley poles maintained and operated by them along Second Street within the corporate limits of Ogden City, Utah, in compliance with an ordinance of said Ogden City requiring them to do so. On the day appointed in the temporary writ the Commission appeared by general demurrer to the petition of plaintiffs for an alternative writ of prohibition and the affidavit in support thereof, and attacked them on the ground that they do not state facts sufficient to justify the relief for which they pray.

At the same time the defendant also filed a motion supported by affidavit to quash the temporary writ and dismiss the action upon the grounds, among others, that the ordinance of Ogden City, above mentioned, is invalid; that the plaintiffs have a plain, speedy and adequate remedy at law by means of an action to test the validity of said ordinance, and that in fact such an action has been commenced. However, for reasons which will appear in the course of this decision, we regard the issue tendered by the demurrer as determinative of the action, and will proceed accordingly.

The facts as they appear from plaintiffs' petition and supporting affidavit are substantially as follows: On May 28th, 1906, the city council of Ogden City by an ordinance duly passed and adopted, hereinafter referred to as the franchise ordinance, granted to the Oregon Short Line Railroad Company, a corporation, its successors and assigns, the right and privilege to construct, maintain and operate a single railway track on the south side of Second Street, beginning

at a point where said Second Street then intersected the line of said railroad company and extending thence east to a point at or west of the west side of Washington Avenue, all within the corporate limits of said Ogden City; that pursuant to said franchise ordinance the Oregon Short Line Railroad Company constructed a single railway track of a length of 1.5 miles along the route as authorized by said ordinance; that said railway track was maintained by said Oregon Short Line Railroad Company until January 1st, 1936; that since said date the plaintiff, Union Pacific Railroad Company, has maintained, and still does maintain, said track as lessee and successor in interest of said Oregon Short Line Railroad Company; that there are no stations upon said track, and that no trains have ever been operated upon said track upon any schedule.

That said franchise ordinance, which is set out in full as an exhibit attached to plaintiffs' application, contained among others, the following provisions:

"Section 3. That the said track shall be laid so as to conform to the grade of said street at this time, and said Oregon Short Line Railroad Company, its successors and assigns, shall alter the same so as to conform to such change of grade as the City Council may from time to time make."

"Section 8. The city reserves the right to make further regulations relating to the use of said track, engines and cars thereon, and the speed of such engines and cars."

"Section 9. This grant shall expire and be terminated at the expiration of fifty (50) years from this date, and on breach of any of the covenants herein set out."

It further appears from said affidavit that within the past two years the United States has constructed a large Army General Supply Depot at the extreme westerly end of said Second Street in Ogden City, which Depot employs a large number of persons, and that there is also being constructed on said Second Street east of Washington Avenue approximately 500 homes, primarily for workers at said Supply Depot, and that in going from such homes to their work such workers will necessarily traverse said Second

Street; that because of the increased travel over Second Street to said Supply Depot the government of the United States requested the city of Ogden to widen said Second Street, including the part thereof along which said track of the Plaintiff Union Pacific Railroad Company is maintained as aforesaid, so as to make a four-lane highway and pave the same.

That thereafter arrangements were made by Ogden City in cooperation with the State Road Commission to widen and improve Second Street in accordance with said request, and an appropriation was secured therefor from the Bureau of Public Roads, and that such appropriation did not include sufficient funds to shift plaintiff Union Pacific Railroad Company's said railtrack, nor to pave between the rails of said track and for two feet on each side thereof in accordance with Sec. 15-7-28, R. S. U. 1933, nor to remove the trolley poles of the plaintiff Utah-Idaho Central Railroad Corporation, which said corporation is permitted to operate on said track by means of electrical cars and engines; that the plaintiff Union Pacific Railroad Company was then advised that the latter mentioned items were to be done at the expense of said plaintiff in accordance with the terms of said franchise from Ogden City.

That said plaintiff thereupon caused an investigation to be made of the cost of shifting its tracks and paving between and along them as aforesaid, as shown by the proposed plans of reconstruction of said street, and determined that such cost would be prohibitive, and not justified by the revenues from the operation of trains over said track; that thereafter several conferences were had with Ogden City and the State Road Commission with the view of eliminating certain items of such cost, but that such conferences were unavailing; and that said plaintiff was advised that it must proceed to comply with said plans without delay and at its own cost.

It further appears that on September 14th, 1942, the Board of Commissioners of Ogden City demanded of said plaintiff, in writing in pursuance particularly of Section

15-7-28, Revised Statutes of Utah, 1933, and of Section 3 of said franchise ordinance (hereinabove quoted) that it do the following things in connection with its tracks on said Second Street:

(a) Change or shift the location of the tracks and raise the tracks so as to conform to the proper grade;

(b) Pave all the space between the different rails and tracks and also a space two feet wide outside of the outer rails of the outside tracks, including all side tracks, crossings and turn-outs used by your Company, (the said Union Pacific Railroad Company);

(c) Move trolley poles and wire.

Said plaintiff was further notified by said writing that it was given five days within which to commence work upon the aforesaid changes and improvements required to be done by it, or to notify the Board of Commissioners of Ogden City of its intention to do so, and that upon failure to so comply the said Board of Commissioners would take action to terminate and cancel said franchise;

That said plaintiff failed to comply with said demand, and that on the 21st day of September, 1942, the Board of Commissioners of Ogden City passed and adopted an ordinance, designated as Ordinance No. 151, which by its terms repealed the aforesaid franchise ordinance of May 28, 1906, and which purported to cancel and annul the rights and privileges conferred thereby. Said ordinance No. 151 recited, among other things, as reasons for repeal of the franchise, facts showing the necessity of widening and improving said Second Street, substantially as hereinbefore set out; that the contemplated improvement of Second Street was necessary in the public interest and welfare; and that to permit said track to remain upon Second Street without complying with the demand of Ogden City would create a hazard to traffic over said street and to the owners of property abutting said track. It then recited the demand made upon the plaintiff under date of September 14, 1942, as above set out, and the failure of said plaintiff to comply with such

demand, and particularly with Section 3, of the franchise ordinance. In addition to provisions for the repeal of said franchise said ordinance No. 151 also ordered as follows:

"Section 2. That the Oregon Short Line Railroad Company, its successors and assigns, is hereby ordered to remove said track and poles which it uses in the operation of its trains, engines and cars on said Second Street in Ogden City, Utah."

It further appears that immediately upon being notified that said ordinance was in effect, the plaintiff, Union Pacific Railroad Company, as successors of the Oregon Short Line Railroad Company, issued orders to its employees to commence removal of said track from said Second Street on October 1, 1942;

That thereafter, on the 28th day of September, 1942, the said Commission initiated a proceeding, designated by it as "Investigation Docket No. 40," and that a copy of the order made by the defendant in such proceeding was served upon each of the plaintiffs; that said order reads in part as follows:

"It appearing that the Union Pacific Railroad Company and the Utah Idaho Central Railroad Corporation operate a spur track extending in part along Second Street in Ogden, Utah, and that said railroad companies propose to discontinue spur track service over said trackage effective October 1st, 1942, and it also appearing that if such discontinuance of service is allowed to become effective several industrial establishments now served over said trackage will have no railroad service available and it has been represented to this Commission that there is a continuous and pressing need for such service, wherefore,

"It Is Ordered, that this Commission enter into an investigation of the facts and circumstances relating to the proposed discontinuance of service and the effects such discontinuance will have upon the shipping public now served by said trackage.

"And It Is Further Ordered, that until the further order of this Commission no change or discontinuance in the service conducted over the aforementioned trackage be made and that the said Union Pacific Railroad Company and said Utah Idaho Central Railroad Corporation continue to furnish the same service over said trackage that has been furnished heretofore, and that said trackage be not

removed or otherwise molested in any manner which would have the effect of interfering with the railroad service over said trackage.

"And It Is Further Ordered, that hearing in this matter will be held before the Public Service Commission of Utah, at City and County Building, Ogden, Utah, on Thursday, the 8th day of October, 1942, commencing at 10:00 o'clock A. M."

That in response to the service of said order the plaintiffs filed with said defendant, on October 2, 1942, a demurrer and a motion challenging the jurisdiction of the Commission in the premises, and praying for a dismissal of said proceeding initiated by it, and a revocation of the restraining order made in connection therewith; that said defendant overruled and denied said motion and demurrer.

Thereupon the plaintiffs applied to this court for an alternative writ of prohibition, thus giving rise to the matter now before us. It is the contention of the plaintiffs that in revoking the franchise for the use of Second Street and ordering the removal of the railway track therefrom Ogden City was acting within its proper and exclusive jurisdiction with relation to the Public Service Commission, and that said Commission in initiating said proceeding of September 28, 1942, and making its above-quoted order, acted without and in excess of its jurisdiction in that, first, no such power as the Commission undertook to exercise as aforesaid has ever been granted to it by the legislature, or otherwise, and, second, that the exercise of such a power by the Commission, if such has been delegated to it, is violative of Section 29, of Article VI of the Constitution of the state of Utah, which is as follows:

"The Legislature shall not delegate to any special commission, private corporation or association, any power to make, supervise or interfere with any municipal improvement, money, property or effects, whether held in trust or otherwise, to levy taxes, to select a capitol site, or to perform any municipal functions."

The Public Utilities Act, from which with its subsequent amendments, the Commission derives its powers was first enacted in 1917, Laws 1917, c. 47. The plaintiffs contend

that prior to that time it was the clear intent of the legislature, as expressed by its acts some of which will be hereinafter mentioned or quoted, to give to municipalities the power to control the use and occupancy of their streets; that such acts have never been repealed, but that, on the contrary, the intention manifested by them has been confirmed by the Public Utilities Act itself and is still subsisting. The Commission on the other hand maintains, that such a power to control the use and occupancy of its streets by municipalities is inconsistent with the powers conferred upon the Commission by the Public Utility Act, and that such inconsistent powers were repealed by implication by the passage of said Act. To quote from the Commission's brief:

"It is the position of the Defendant　*　*　*　that cities and towns no longer retain jurisdiction to grant franchises to public utilities within such cities."

In that connection the Commission cites *Denver & Rio Grande Western Railroad Company* v. *Public Utilities Commission of Utah,* 51 Utah 623, 172 P. 479, and it relies particularly upon that part of the Public Utilities Act which appears as Section 76-4-1, Revised Statutes of Utah, 1933. That Section is as follows:

"The commission is hereby vested with power and jurisdiction to supervise and regulate every public utility in this state, and to supervise all of the business of every such public utility in this state, and to do all things, whether herein specifically designated or in addition thereto, which are necessary or convenient in the exercise of such power and jurisdiction."

The sections of the statute relating to the powers and duties of cities which were in existence prior to and at the time of the enactment of the Public Utilities Act, and which have never been expressly repealed, but which, it is argued by the Commission, were impliedly repealed insofar as they are inconsistent with said Act and particularly the above-

quoted part thereof, as they appear in the Revised Statutes of 1933, are as follows:

15-8-33. "They [cities] may permit, regulate or prohibit the locating, constructing or laying of the tracks of any railroad, street railroad or tramway in any street, alley or public place; and may by ordinance grant franchises to railroad and street railroad companies, and to union railroad depot companies, to lay, maintain and operate in any street or part or parts of streets or other public places tracks therefor, but such permission shall not be exclusive or for a longer time than one hundred years."

15-8-82. "They [cities] may require the tracks of any railroad or street railway company to be taken up and removed which shall have been laid upon the streets or highways of the city, and which remain in the streets or highways contrary to the terms of the franchise of the company, or which are declared by the governing body, a nuisance, or which such company has failed to operate for a period of nine months prior to the time when such nuisance shall be declared, and shall have the power to declare any of the acts specified in this section a nuisance."

15-8-8. "They [cities] may lay out, establish, open, alter, widen, narrow, extend grade, pave or otherwise improve streets, alleys, avenues, boulevards, sidewalks, parks, airports and public grounds, and may vacate the same or parts thereof by ordinance."

77-0-8. "No railroad shall use any road, street, alley or highway within any county, city or town except with the consent of the authorities of such county, city or town as provided by law; provided, that this section shall not be construed to prevent railroads from crossing at right angles, or as nearly as may be, any street, alley or highway across which its located line may pass."

The Public Utilities Act itself, as enacted in 1917, and as it now appears in Revised Statutes of Utah, 1933, recognizes the power of municipalities to grant franchises in at least two instances. In the first instance, Section 76-4-10 of said Act grants power to the Commission to order two or more railroads or street railroads under the same control and using tracks of the same gauge to make connection of their tracks when the Commission might find that the public convenience and necessity would be subserved thereby, and further provides as follows:

"After the necessary franchise or permit has been secured from the county, city or town the commission may likewise order such physical

connection within such county, city or town between two or more railroads which enter the limits of the same.",
and, in the second instance subsection (3) of Section 76-4-24 of said Act, relating to the issuance of certificates of convenience and necessity by the Commission, reads as follows:

"Every applicant for such a certificate shall file in the office of the commission such evidence as shall be required by the commission to show that such applicant has received the required consent, franchise or permit of the proper county, city, municipal or other public authority."

Unquestionably it appears from the above-quoted legislative enactments that before the adoption of the Public Utilities Act a railroad could not occupy any of the streets of a city without the consent of its governing body. Cities by express authority of the legislature could "permit, regulate or prohibit the * * * constructing or laying of the tracks of any railroad. * * * in any street, alley or public place"; they could grant franchises to railroad companies "to lay, maintain and operate in any street * * * tracks therefor;" and they could require the tracks of any railroad which remained upon its streets "contrary to the terms of the franchise of the company, or which are declared * * * a nuisance," to be taken up and removed. Sections 15-8-33, 15-8-82, 15-8-8, 77-0-8, Revised Statutes of Utah, 1933, supra. Those powers have never been expressly revoked by repeal. Were they repealed by implication by enactment of the Public Utilities Act, as contended by the Commission?

It is elementary that statutes may be repealed by implication, and where the provisions of a later statute are clearly and manifestly repugnant to the provisions of existing statutes the latter are deemed repealed to the extent of such repugnancy. Such repeals, however, are not favored, and if two apparently conflicting acts can be reasonably construed so as to reconcile and give effect to each, such construction should be adopted. Whether there has been a repeal by implication is primarily a ques-

tion of legislative intent, and it cannot be adjudged that there has been such a repeal unless the legislative intent clearly appears. *People* v. *McAllister,* 10 Utah 357, 37 P. 578; *State* v. *Carmen,* 44 Utah 353, 140 P. 670; *University of Utah* v. *Richards,* 20 Utah 457, 59 P. 96, 77 Am. St. Rep. 928; 59 C. J. 904 et seq.

It is apparent that the Legislature by expressly recognizing the power of municipalities to grant franchises in the Public Utilities Act itself (Sections 76-4-10, 76-4-24, Revised Statutes of Utah, 1933, above in part quoted) did not intend to repeal in toto the powers theretofore granted to cities and towns to grant franchises. True in *Denver & Rio Grande Western Railroad Company* v. *Public Utilities Commission,* supra, we held that that part of the Public Utilities Act designated as Section 76-4-15, Revised Statutes of Utah, 1933, which confers upon the Commission exclusive power to prescribe the manner and terms upon which railroad tracks may be constructed and maintained across a public street, effected an implied repeal of all acts and parts of facts which were inconsistent therewith, and that in view of such express grant of power to the Commission it had jurisdiction, which it was required to assume, of an application by an established railroad to cross certain streets within the territorial limits of a city. In the instant case the Commission contends that since it has jurisdiction over street crossings within the purview of said Section 76-4-15, it also has jurisdiction where the application involves the laying of tracks lengthwise along a city street. We do not so view the matter. Section 76-4-15 is an express and specific grant to the Commission of power over street crossings, and as we remarked in *Bamberger Electric Company* v. *Public Utilities Commission,* 59 Utah 351, 204 P. 314, 320,

"'* * * where a specific power is conferred by statute upon a tribunal, board, or commission with limited powers, the powers are limited to such as are specifically mentioned.'"

In this connection it is to be noted that the law as it existed at the time of the adoption of the Public Utilities Act, never conferred upon cities the unqualified power to grant franchises to railroads where a crossing at right angles over a street was involved. While they had the general power to grant franchises to railroads, that power was subject to the proviso (Section 77-0-8, Revised Statutes of Utah, 1933, quoted supra) "that this section shall not be construed to prevent railroads from crossing at right angles, or as nearly as may be, any street * * * across which its located line may pass." As we view the matter, therefore, said Section 76-4-15, while it was intended to give to the Commission power over street crossings within cities and towns, and did give it such power, nevertheless, did not repeal the general powers theretofore conferred upon municipalities to control the use and occupancy of their streets by railroads. Such power was originally conferred by the Legislature upon municipalities; it has not been expressly repealed, and we do not find anything in subsequent legislation which is clearly and manifestly repugnant to that power. It therefore remains in municipalities where it was originally placed. *State* v. *Public Service Commission of Missouri*, 301 Mo. 179, 257 S. W. 462.

The Commission urges, however, that in view of this court's holdings in *Murray City* v. *Utah Light & Traction Company*, 56 Utah 437, 191 P. 421, and *Salt Lake City et al.* v. *Utah Light & Traction Company*, 52 Utah 210, 173 P. 556, 3 A. L. R. 715, such power on the part of cities and towns, particularly as it affects the power to revoke for violation, has been construed by us to be impliedly repealed. In those cases we held in effect that the Public Service Commission has the power to regulate the rates of privately owned utilities operating within a city or town despite the fact that such utility operates under a franchise from such city or town which purports to fix the rates. In both of those cases street railways were involved, and Article 12, Section 8, of the state Constitution provides:

"No law shall be passed granting the right to construct and operate a street railroad, * * * within any city or incorporated town, without the consent of the local authorities who have control of the street or highway proposed to be occupied for such purposes."

In view of the foregoing Constitutional provision it is apparent that the construction and operation of a street railroad within a city or town requires as a prerequisite the consent of the authorities of such city or town. Nevertheless, we held that that provision, neither expressly or by implication, delegated any authority to municipalities to regulate rates. That power, we held, was retained in the state, and could be exercised by it whenever necessity demanded. We called attention also to Article 12, Section 12, of the Constitution which provides:

"All railroad and other transportation companies are declared to be common carriers, and subject to legislative control";

and to the mandate of Section 15 of the same article which in part is as follows:

"The Legislature shall pass laws establishing reasonable maximum rates of charges, for the transportation of passengers and freight, * * *."

In the case at bar a "railroad" as distinguished from a "street railroad" is involved. The matter, therefore, is not affected by said Article 12, Section 8 of the Constitution. Nevertheless, as has been said above, the Legislature has granted to cities and towns the power to grant franchises for the use and occupancy of their streets, and the resulting situations as to "street railroads" and "railroads" is the same so far as the instant case is concerned. In the case of "street railroads" cities derive their power to grant permits from the Constitution; in the case of "railroads" they derive it from the Legislature. In either case permission of local authorities is a prerequisite to the use of municipal streets. *State* v. *Public Service Commission of Missouri*, supra. When such permission has been granted and the carrier is in op-

eration, then the power of the Commission to regulate the rates of such carrier attaches, and may be exercised by the Commission regardless of any agreement between the carrier and the municipality with regard to rates. That is so because in attempting to regulate rates by such an agreement the municipality is acting in a sphere beyond the scope of the powers delegated to it. The matter of granting the permission, however, is one that pertains to cities and towns, and they, not the Commission, have jurisdiction therein. It is therefore quite consistent to hold on the one hand that cities and towns have power to grant permits for the use and occupancy of their streets by common carriers, and on the other that in the operation of such common carriers the Commission, as an arm of the Legislature, has the power to regulate rates.

It is to be noted that cities and towns are not given general power to grant franchises. The power given them is to grant franchises for the use of their streets for specific purposes to certain persons, companies or corporations, among which are railroad and street railroad ■ companies. Sections 15-8-33 and 77-0-8, quoted above.

In *Utah Light & Traction Co.* v. *Public Service Commission,* 101 Utah 99, 118 P. 2d 683, 689, we defined the term "franchise" as "* * * the privilege of doing that which does not belong to the citizens generally by a common right"; and we pointed out that the right to lay rail is a special privilege within the purview of that definition and therefore a proper subject of grant by franchise. We added that franchises "* * * are required only in cases in which it is sought to impose upon the street a special burden which cannot be imposed generally, that is, to burden the street with a special privilege which the public generally may not likewise enjoy." We concluded that since the application in that case was by an automobile corporation for the operation through certain cities as a common carrier by automobile, and since automobiles do not burden cities with rails or otherwise in a special manner, but only in the same

manner as the public generally, that the applicant was not subject to franchise requirements. In other words, cities and towns have the power conferred upon them to grant franchises for the use of their streets where such use necessitates the burdening of the street for the duration of the franchise with some physical instrumentality such as railway tracks or trolley poles, as distinguished from a general power to control the use of their streets where such use is merely such as is enjoyed by the public in common. Certainly, in the case last cited, this court recognized the power of cities to grant franchises, within the scope of the definition of that term therein contained, and did not regard that power as repealed by the Public Utilities Act, or otherwise.

In the instant case the franchise ordinance granted to the Oregon Short Line Railroad Company the right and privilege of burdening Second Street in Ogden City with a single track railway. Clearly Ogden City had the power to grant such a franchise. Does it not also have the power to revoke it for a violation of the conditions upon which the grant was made, and to make such revocation effective by requiring a removal of the rails and other physical instrumentalities used in pursuance thereof? We think that it does. The power of cities with regard to franchises is not limited to the mere granting thereof. Reason dictates, and the Legislature has recognized, that as a corollary to the power of making the original grant, they must also have the power of continuing control. They may, therefore, in making the grant, agree upon conditions as to its duration, provided only that such agreements are within the scope of their powers. In this case the duration of the franchise was not conditioned upon the rates to be charged by the grantee, nor upon other matters within the jurisdiction of the Commission, but upon matters relating to the physical burdening of the street with its rails. The covenants of the franchise ordinance here involved relates only to matters connected with the privilege of maintaining a single track railway on Second Street, e. g., the agreement that the gran-

tee should "alter the same (its track) so as to conform to such change of grade as the City Council may from time to time make." Those were matters within the scope of the powers granted to Ogden City. The grantee has violated those covenants. Ogden City may, therefore, revoke its franchise, and, in accordance with said Section 15-8-82, may require that its tracks be taken up and removed. *City of Portsmouth* v. *Virginia Railway & Power Company*, 141 Va. 54, 126 S. E. 362, 39 A. L. R. 1510; *Village of Grandville* v. *Grand Rapids, Holland & Chicago, et al.*, 225 Mich. 587, 196 N. W. 351, 34 A. L. R. 1408; *R. E. Duvall Co*. v. *Washington R. Co.*, D. C., 60 F. 2d 315.

Since we hold that the powers exercised by Ogden City in revoking the franchise ordinance and ordering a removal of the tracks and trolley poles of the plaintiff railroads were granted to it by the Legislature, and were not delegated to the Commission, this case presents no question of delegation of municipal functions to a special commission in violation of Section 29, Article VI of the Constiution. That section of the Constitution, together with Section 10, of Article XII thereof, above referred to, however, is indicative of an intent on the part of the framers of the Constitution to secure to cities and towns a large degree of self-government. Moreover, the Legislature by granting to them large power to control their own affairs has likewise manifested such an intent. Those are further reasons why we hold that the Public Utilities Act, even with its broad grant of power to the Commission to regulate and supervise public utilities, did not repeal by implication the power granted to municipalities to control by franchise the special burdening of their streets. Until the legislature makes a more definite pronouncement of its intent to deprive cities of such power, we are impelled to hold that it still resides in them.

In that connection the Commission suggests that even though a franchise might be binding as between the city and the grantee, that nevertheless the Commission within

the scope of its functions might issue a conflicting order that would take precedence over the terms of the franchise. That, as we have noted, is true with respect to rates, and other matters over which the Commission has exclusive jurisdiction. It is not true, however, with respect to the matter of franchises granted by municipalities for the special use of their streets. As we have already pointed out, the power to grant such franchises is not a naked one. There is attached to it, to make it effective, the power of continuing control, and that control is exclusive. It is not, within the scope of effective legislative enactments, shared concurrently with the Commission, nor is the consent of the Commission necessary to the exercise by the municipalities of its proper rights within the terms of the franchise.

Authorities other than those already cited herein which have been called to our attention, and which bear upon some one or more of the conclusions herein reached, are the following: *Henry L. Doherty & Co.* v. *Toledo Rys. & Light Co.,* D. C., 254 F. 597; *State ex rel. Tacoma Ry. & Power Co.* v. *Public Service Commission of Washington,* 101 Wash. 601, 172 P. 890; *Jones* v. *Dallas Ry. Co.,* Tex. Civ. App., 224 S. W. 807; *City of Belleville* v. *Citizen's Horse Ry. Co.,* 152 Ill. 171, 38 N. E. 584, 26 L. R. A. 681; *Backus-Brooks Co.* v. *Northern P. Railway Co.,* 8 Cir., 21 F. 2d 4, 20; 38 Am. Juris. pp. 238, 241.

One other matter urged by the Commission merits brief attention: the asserted invalidity of the repealing ordinance of September 21, 1942. We do not consider that matter to be of any controlling importance in this case. What is here primarily attacked is the jurisdiction of the Commission, and that jurisdiction is not dependent upon the validity or invalidity of any ordinance that Ogden City might enact. If the Commission had the jurisdiction which it here asserts, it would have it despite any ordinance in the premises involved that Ogden City might adopt. True, the regularity or the propriety of the City's asserted adoption of an ordin-

ance might become the proper subject, with proper parties, of an action or proceeding, to enjoin, review or prohibit its action under such ordinance, but a determination of such matters is not necessary to a decision in this case.

Since the Legislature has granted to cities and towns the power to control the use and occupancy of their streets to the extent as hereinbefore set forth, and has never expressly granted it to the Commission; and since those powers have never been repealed either expressly or by implication, but on the other hand within the limits of the issues here presented, may be construed so as to give effect both to them and to the provisions of the Public Utility Act; and since within the purview of the foregoing the Commission in initiating its said proceeding of September 28, 1942, designated as "Investigation Docket No. 40," was acting without and in excess of its jurisdiction, it is ordered that the alternative writ of prohibition heretofore granted by this court be made permanent.

LARSON, McDONOUGH, and MOFFAT, JJ., concur.

WOLFE, Chief Justice (concurring).

I concur. The logical conclusion from this opinion would seem to be that the city and the railroad may agree to terminate a franchise, for if the city might or might not revoke the franchise on failure to comply with a condition, an exercise of choice even against the will of the railroad, a fortiori the city and carrier could agree to terminate. If by such termination industries were left without facilities, there would be little that could be done about it, at least as far as the Public Service Commission is concerned. It was this realization which caused me to examine carefully Secs. 76-3-1, 76-3-20, 76-4-11 and 76-4-15, U. C. A. 1943. The first provides in part:

"Every public utility shall furnish, provide and maintain such * * * facilities as will promote the * * * convenience of its patrons, * * * and the public, and as will be in all respects adequate, efficient, just and reasonable."

Section 76-3-20 provides that:

"Every railroad corporation, upon the application of any corporation or person being a shipper or receiver or contemplated shipper * * * for a connection between the railroad of such railroad corporation and any existing or contemplated private track, * * * shall make such connection and provide such switches and tracks as may be necessary for that purpose, * * * provided, that such connection is reasonably practicable and can be installed and used without materially increasing the hazard of the operation of the railroad with which such connection is sought, and that business which may reasonably be expected to be received by such railroad corporation over such connection is sufficient to justify the expense of such connection to such railroad corporation."

This section is headed "Railroad Connections by Switches and Spurs." A spur track is defined in International New Dictionary, 2nd Edition, as "a track diverging from a main or branch line, over which no regular train service is maintained." That fits the track in question. But it is not certain that the text of the section requires the railroad to connect with industries which are some distance from their main or branch tracks where private property must be condemned to accomplish the purpose. If so, it would certainly be subject to the provisional clause. But at all events I think such duty to make connections would be subject to Sec. 15-8-33 and Sec. 77-0-8, U. C. A. 1943. The Public Utilities Commission would, as holds the main opinion, have no authority under 76-4-10 to require such connections independently of a franchise from the city. In fact as the opinion points out Sec. 76-4-10 points expressly to such conclusion. Sections 76-3-1, 76-3-20 and 76-4-11 did not impliedly repeal Sections 15-8-33, 15-8-82 or Sec. 77-0-8. The requirements, duties or powers imposed or given by the former sections are subject to the power of cities granted by the latter sections. Of course, it is obvious that if the Public Service Commission can only require a spur track to be built by a carrier under Sec. 76-4-11 subject to the permission and granting of a franchise by the city to lay the tracks on its streets, then for the same reason the Public Service Com-

mission cannot compel the maintenance of a spur already built over the streets and serving industries where the carrier and the city agree to terminate a franchise and especially where the tracks remain on a street "contrary to the terms of the franchise." Sec. 15-8-82.

While the Public Service Commission is given no power, except with consent of the city to require a railroad to lay or retain its tracks along a street, the fact that it is given "exclusive power to determine and prescribe the manner, including the particular point of crossing," etc., of a "street" by a railroad and visa versa and the fact that "no track of any railroad shall be constructed across * * * a street at grade * * * without the consent of the commission [Public Service Commission] having been first secured," may give rise to some wonderment. The reason seems to lie in the fact that railroads could obtain rights of way over private property and if the city could prevent their tracks from being placed across streets it would utterly prevent the railroad from entering a city. This seems to be the fundamental reason for the distinction and the reason why the Legislature sought to withhold such absolute power from the city. Considerations of safety and maintenance of railroad crossings seem to be secondary considerations. Cities themselves have the power to attend to that.

The main opinion has touched on the very significant fact that the Constitution places in cities the power to determine whether a street railway shall operate within a city or town, whilst it did not prohibit the Legislature from passing a law requiring cities to admit railroads. This is in keeping with what was said above in regard to railroad crossings. A street railway is a matter of local concern. A railroad is a matter of state and national concern. The constitution, therefore, intended to leave to the Legislature the power to determine the conditions on which railroads could enter towns. The Legislature by Sec. 15-8-33 and 15-8-82 gave the cities the power to withhold or grant a franchise to the railroad to use its streets, but such power may be taken

away and given to the Public Service Commission. Up to date, the Legislature has not done so expressly or impliedly. I see no escape from the reasoning of the main opinion.

The opinion expressly states that since no delegation of powers claimed by the respondent was made to it, no question under Sec. 29, Art. VI of the Constitution is presented. No implication will be drawn from that statement in the opinion that if such delegation of powers had been made to the Public Service Commission, it would have been unconstitutional as against Sec. 29 of Article VI. In view of Section 12, Article XII of the Constitution and the very language of Section 29, Article VI which appears to cover, as far as a city is concerned, matters other than the granting of franchises, the contrary conclusion would seem the reasonable one, but as stated in the opinion such question is not before us.

PRATT, J., on leave of absence.