# PROVO CITY v. DEPT. OF BUSINESS REG. et al.

No. 7416. Decided May 15, 1950 (218 P.2d, 675)

See 50 C.J.S Judgments, sec. 900.  Public service commissions, control of street railway crossings by, see note, 5 A.L.R. 36.  See, also, 55 Am. Jur. 86.

*Dallas H. Young,* Provo, *I. E. Brockbank,* Provo, for plaintiff.

*Clinton D. Vernon,* Atty. Gen., *Mark K. Boyle,* Asst. Atty. Gen., for defendants.

LATIMER, Justice.

This cause is before this court on an order to show cause as to why a writ of prohibition requested by Provo City, a municipal corporation, should not issue to enjoin the Public Service Commission of Utah, from hearing an application of the Denver & Rio Grande Western Railway Company for an order to close a public street within

the city limits of Provo, Utah. Hereinafter, Provo City, the Denver & Rio Grande Western Railway, and the Public Service Commission of Utah, will be referred to as the city, the railroad, and the commission, respectively.

In the fall of 1942, trustees of the railroad determined that in order to accomodate the expanding business and transportation activities in and around the city of Provo, Utah, it would be necessary to increase the railroad's yard in that area. They conceived two alternative proposions: Either to increase the number of tracks within the city limits, or to construct additional facilities outside the limits of the city. The city officials encouraged the railroad to enlarge its yard within the city limits and negotiations were commenced for the closing of a portion of 9th South Street to permit the expansion. Relying upon oral statements made at that time by the mayor and commissioners of the city that they would pass an ordinance closing the crossing, the railroad barricaded the street and placed additional tracks over the roadway. The new construction included the addition of new tracks, which together with those already existing, made a total of twenty-one tracks passing over 9th South Street. In addition to laying the new tracks, the railroad obtained an easement and constructed a cutoff road for the purpose of diverting the traffic around the closed crossing and since 1943 the public has used this cut-off road. Citizens of the city protested the closing of the street crossing but action was not taken on their protest except that the city commission never passed the promised ordinance.

Early in 1945, the then mayor and commissioners of the city threatened to remove the barricades and commenced reconstructing the roadway along 9th South Street across the railroad yards and tracks. Protesting this reversal of policy by the city, the railroad brought an action in the United States District Court for the District of Utah, contending that the city was estopped from attempting to re-

open the street at this crossing. After a hearing the Federal District Court enjoined the city from interfering with the barricades and from reconstructing the crossing. The city appealed from the judgment and the United States Circuit Court of Appeals for the 10th Circuit, 156 F.2d 710, reversed and held that the railroad was not entitled to invoke the doctrine of estoppel against the city for reasons not material to this decision.

Subsequently, the railroad filed an application with the Public Service Commission of Utah, alleging that Provo City had passed and served upon the railroad a resolution requiring it to reconstruct the crossing. On August 13, 1947, after hearing evidence on the questions involved, the commission issued an order in the following words:

"public convenience and necessity do not demand the establishment, creation, or construction of a street or highway over the tracks of the Denver & Rio Grande Western Railroad Company along the lines of Ninth South Street in Provo City, Utah."

The city made no application for rehearing on that order and took no appeal from that decision.

In March, 1949, the railroad filed a second application with the commission, alleging that the city had again demanded that the railroad open and construct a crossing over 9th South Street. As part of its petition the railroad requested a decision from the commission that it need not establish or construct a crossing over the tracks. In April, 1949, the city filed with the commission a motion to dismiss the application on the grounds that the commission had no jurisdiction in the matter; that there was no application before the commission for the establishment or construction of a crossing; that the railroad had unlawfully blockaded and closed the street in 1943; that during all the times mentioned 9th South Street was a public street; and that the railroad's right to legally close this street had been determined adversely to its contention by the United States Circuit Court of Appeals. The com-

mission denied the motion to dismiss and this application to restrain the commission from entertaining jurisidiction in this cause followed. Subsequently, upon stipulation of counsel for the city and the commission, the railroad was made a party defendant.

In its petition and brief, the city contends that the application of the railroad filed with the commission is, in effect, a request that the commission order 9th South Street to be legally closed since that street is and for seventy years has been legally open; that the physical barricades erected illegally by the railroad could not affect the public right-of-way across the tracks; that the only way a right-of-way can be legally closed is by an ordinance passed by the city; and that the commission has no jurisdiction or authority to enter an order affecting public streets within the municipal limits of the city. The railroad, on the other hand, contends that the commission does have jurisdiction to deal with this crossing; that although the city has never vacated the street by passing an ordinance to that effect, still the crossing has not been opened to the public; that there are now twenty-one railroad tracks laid over the street where there were only eight before; and for all practical purposes the crossing is closed.

Many of the issues and arguments advanced by counsel for the parties are not pertinent to a decision of this cause. We have before us the single question: Does the Public Service Commission have jurisdiction to hear and determine controversies over the opening, closing or maintenance of railroad crossings within municipal limits? A determination of this question requires an analysis of the constitutional and statutory provisions relating to the powers and duties of both the cities and the commission with respect to regulation and control of railroads within the corporate limits of cities in this state.

Article VI, Sec. 29, of the Constitution of this State, which is the Section relied upon by the city, restricts the legislature from delegating power to commissions to interfere with local self-government of cities. It provides as follows:

"The Legislature shall not delegate to any special commission, private corporation or association, any power to make, supervise or interfere with any municipal improvement, money, property or effects, whether held in trust or otherwise, to levy taxes, to select a capitol site, or to perform any municipal functions."

In *Logan City* v. *Public Utilities Commission of Utah,* 72 Utah 536, 271 P. 691, this court interpreted the purposes of this section and explained its restriction upon the legislative grant of power to the Public Utilities Commission. In that case, this court was considering the authority of the commission to fix rates for a municipally owned power plant and we held that the attempt by the Public Utilities Commission to fix the rates for the Logan City power plant was a violation of that constitutional provision. That case, however, can be distinguished from the instant case because in matters concerning railroads the constitution contains a special provision not applicable to other utilities and if Art. VI, Sec. 29 and Art. XII, Sec. 12 are considered in the light of each other, the former does not embrace delegation of powers to deal with railroads. Article XII, Sec. 12, of the Constitution provides as follows:

"*All railroad and other transportation companies are declared to be common carriers, and subject to legislative control;* and such companies shall receive and transport each other's passengers and freight, without discrimination or unnecessary delay." (Emphasis supplied.)

From the provisions of this section it is apparent that the framers of the constitution intended that control over railroads operating within this state should rest with the legislative department of the state. Such an intent is consistent with the nature of the operations and problems of railroads. For the most part, their activities are the concern of the general public rather than of the individual communities they serve.

Under the consitutional provision quoted above, the legislature has, in turn, delegated certain powers to the cities and other powers to the commission. We turn now to a consideration of these statutory provisions and discuss first those powers given to the cities of this state.

Under the provisions of statutes hereinafter cited and which for the most part were enacted prior to 1917, cities may construct, maintain and operate, or authorize the construction, maintenance and operation of street railways. Section 15—8—14, U.C.A.1943. The term "street railways" as used in that section has been interpreted to mean transit companies operating within the city limits or within the municipal area. Cities may also regulate the movement of traffic upon their streets, and this includes regulation of the movement of railway equipment. Section 15—8—30, U.C.A.1943. Cities may permit, regulate or prohibit the locating, construction or laying of the tracks of any railroad in their streets, and may by ordinance grant franchises to railroad companies to lay, maintain and operate tracks in their streets. Section 15—8—33, U.C.A.1943. Also, *cities may change the location, grade or crossing of any railroad,* and declare tracks laid in the streets a nuisance and have them removed where the railway company has failed to operate cars upon the tracks for a period of nine months after laying. (Emphasis added.) Section 15—8—34, U.C.A.1943. Under Sec. 15—8—8, U. C. A. 1943, cities are given the power to improve and lay out streets and vacate them by ordinance.

If the rights of the city were controlled by the previous sections, and particularly Sec. 15—8—34, U.C.A.1943, there might be merit in the city's present contention. But Sec. 77—0—8, U. C. A. 1943, indicates an intention on the part of the legislature to limit the powers of cities over their streets in those cases where a railroad crossing is

involved. This provision is practically identical with Sec. 437, R. S. 1898, and provides as follows:

"No railroad shall use any road, street, alley or highway within any county, city or town except with the consent of the authorities of such county, city or town as provided by law; provided, *that this section shall not be construed to prevent railroads from crossing at right angles, or as nearly as may be, any street, alley or highway across which its located line may pass.*" (Emphasis supplied.)

With the foregoing statutes, or substantially similar provisions, included as part of the law of this state, the legislature in 1917 enacted the Public Utilities Act (Secs. 4775-4853, C. L. 1917) from which, with its subsequent amendments, the present Public Service Commission receives its power. The provisions of the act pertinent to the instant case, are as follows:

Section 76—4—1, U.C.A1943, provides:

"*The commission is hereby vested with power and jurisdiction to supervise and regulate every public utility in this state,* and to supervise all of the business of every such public utility in this state, and *to do all things, whether herein specifically designated or in addition thereto, which are necessary or convenient in the exercise of such power* and jurisdiction." (Emphasis supplied.)

Section 76—4—15, U.C.A.1943, provides as follows:

"(1) *No track of any railroad shall be constructed across a public road, highway or street at grade,* nor shall the track of any railroad corporation be constructed across the track of any other railroad or street railroad corporation at grade, nor shall the track of a street railroad corporation be constructed across the track of a railroad corporation at grade, *without the permission of the commission having first been secured;* provided, that this subjection shall not apply to the replacement of lawfully existing tracks. *The commission shall have the right to refuse its permission or to grant it upon such terms and conditions as it may prescribe.*

"(2) *The Commission shall have the exclusive power to determine and prescribe the manner, including the particular point of crossing, and the terms of installation, operation, maintenance, use and protection of each crossing of one railroad by another railroad or street railroad,* and of a street railroad by a railroad and *of each crossing of a public road or highway by a railroad or street railroad, and of a street by a railroad or vice versa, and to alter or abolish any such crossing * * *.*

"(3) *Whenever the commission shall find that public convenience and necessity demand the establishment, creation or construction of a crossing of a street or highway over, under or upon the tracks or lines of any public utility,* the commission may by order, decision, rule or decree require

the establishment, construction or creation of such crossing, and such crossing shall thereupon become a public highway and crossing." (Emphasis supplied.)

Assuming without deciding that in the earlier acts which we have quoted there existed some uncertainty as to whether cities had been delegated the authority to deal with street-railway crossings, all doubts were removed by the 1917 enactment. It is apparent that at that date the legislature recognized that railroad-street crossings presented distinct problems not posed by intra city operations and that it intended the jurisdiction over them should rest with the commission. Because the legislature may have at one time authorized the city to control crossings would not prevent a subsequent legislature from revoking the grant and vesting the authority in a state agency. The wording of the 1917 act was so clear and explicit that if it be contended the city had been delegated the power prior to that time then the subsequent enactment repealed the former law.

We recognized this principle in two previously decided cases and held that the Public Service Commission and not cities had jurisdiction in crossing cases and that cities had authority in those matters involving use of the streets.

In the case of *Denver & Rio Grande R. Co.* v. *Public Utilities Commission of Utah,* 51 Utah 623, 172 P. 479, the railroad applied to this court for a writ of mandamus against the Public Utilities Commission. There, the railroad had requested permission to build and construct additional facilities across public roads and highways in Salt Lake City and Salt Lake County. The commission had declined to accept jurisdiction of the matter contending that a franchise from the local authorities was necessary in order to construct the proposed facilities. This court held that the commission had erred in declining to act on the application for the crossing permits. Mr. Justice McCARTY, interpreting Sec. 1, Art. 4, and Sec. 14, Art 4

of the Public Utilities Act (Laws 1917, c. 47), which sections are almost identical with sections 76—4—1 and 76—4—15, U.C.A. 1943, supra, said, page 626 of 51 Utah page 480 of 172 P.:

"It will be noticed that the act confers on the commission the exclusive power to prescribe the manner and the terms upon which railroad tracks may be constructed, maintained, and operated across a public road, highway, or street, and that 'no track or railroad shall be constructed across a public road, highway, or street at grade * * * without having first secured the permission of the commission.'

"* * * Counsel seem to take it for granted, and to have discussed the case on the theory, that no parts of the statutes in force at the time the act went into effect, giving railroads the right to occupy and cross roads, highways, and streets, are repealed or abrogated by the act except the sections specifically mentioned in the repealing clause. Not only are the sections of the statute specifically mentioned in the act repealed, but 'all acts and parts of acts inconsistent with the provisions of this act' are repealed. Since the act, in language so plain that it will admit of but one construction, confers on the commission the exclusive power to determine and prescribe the manner, and the terms upon which railroad companies may construct, maintain, and operate railroad tracks across public roads, highways, and streets within the state and repeals all acts and parts of acts inconsistent with the provisions conferring such power, but little need or can be said on the subject, except that the commission erred in declining to act on the application made by the petitioner for crossing permits * * * "

In the case of *Union Pacific R. Co.* v. *Public Service Commission*, 103 Utah 186, 134 P. 2d 469, 473, we disposed of the question of who had jurisdiction to control the removal of equipment from the streets of a city. In that case the City of Ogden passed an ordinance requiring that the railroad remove certain tracks and poles used in the operation of its trains on Second Street in Ogden, Utah. The railroad commenced removing the facilities and the commission issued an order that it investigate the matter and requested that the parties appear for a hearing. The railroad and the city challenged the jurisdiction of the commission and applied to this court for an alternative writ of prohibition. The writ was eventually made permanent. The opinion in that case sets out the constitutional and statutory provisions regarding the respective rights of cities and the commission

in regulating the activities of the railroads within the corporate limits of cities and distinguishes between those instances where a railroad is along a city street and where it crosses a city street.

*Baker,* District Judge, speaking for the court, said:

"Unquestionably it appears from the above-quoted legislative enactments that before the adoption of the Public Utilities Act a railroad could not occupy any of the streets of a city without the consent of its governing body. Cities by express authority of the legislature could 'permit, regulate or prohibit the   *  *  *  constructing or laying of the tracks of any railroad,  *  *  *  in any street, alley or public place'; they could grant franchises to railroad companies to 'lay, maintain and operate in any street  *  *  *  tracks therefor'; and they could require the tracks of any railroad which remained upon its streets 'contrary to the terms of the franchise of the company, or which are declared  *  *  *  a nuisance,' to be taken up and removed. Sections 15—8—33, 15—8—83, 15—8—8, 77—0—8, Revised Statutes of Utah, 1933, supra. Those powers have never been expressly revoked by repeal. Were they (then) repealed by implication by enactment of the Public Utilities Act, as contended by the Commission?

*         *         *         *         *         *

"It is apparent that the Legislature by expressly recognizing the power of municipalities to grant franchises in the Public Utilities Act itself (Sections 76—4—10, 76—4—24, Revised Statutes of Utah, 1933, above in part quoted) did not intend to repeal in toto the powers theretofore granted to cities and towns to grant franchises. *True in Denver & Rio Grande Western Railroad Company v. Public Utilities Commission, supra, we held that part of the Public Utilities Act designated as Section 76—4—15, Revised Statutes of Utah, 1933, which confers upon the Commission exclusive power to prescribe the manner and terms upon which railroad tracks may be constructed and maintained across a public street, effected an implied repeal of all acts and parts of acts which were inconsistent therewith, and that in view of such express grant of power to the Commission it had jurisdiction, which it was required to assume, of an application by an established railroad to cross certain streets within the territorial limits of a city.* In the instant case the Commission contends that since it has jurisdiction over street crossings within the purview of said Section 76—4—15, it also has jurisdiction where the application involves the laying of tracks lengthwise along a city street. We do not so view the matter.  *  *  *"  (Italics supplied.)

Mr. Justice WOLFE, in a concurring opinion, states, page 206 of 103 Utah, page 478 of 134 P.2d:

"While the Public Service Commission is given no power, except with consent of the city to require a railroad to lay or retain its tracks along a street, the fact that it is given 'exclusive power to determine and prescribe the manner, including the particular point of crossing', etc., of a 'street' by a railroad and vice versa and the fact that 'no track of any railroad shall be constructed across  *  *  *  a street at grade  *  *  *  with-

out the consent of the Commission (Public Service Commission) having been first secured', may give rise to some wonderment. The reason seems to lie in the fact that railroads could obtain rights of way over private property and if the city could prevent their tracks from being placed across streets it would utterly prevent the railroad from entering a city. This seems to be the fundamental reason for the distinction and the reason why the Legislature sought to withhold such absolute power from the city. Considerations of safety and maintenance of railroad crossings seem to be secondary considerations. Cities themselves have the power to attend to that."

We therefore reaffirm the holding that the Public Service Commission has jurisdiction of controversies involving street-railroad crossings; that the commission under Section 76—4—15, U.C.A., 1943, supra, must hear and determine this controversy; and that the rights of the parties must be determined before that body.

One further contention of the city merits comment. It is urged by the city that the matters to be decided in this case are barred because of res judicata; that the issues were settled by the decision of the United States Circuit Court of Appeal Tenth Circuit in the case of *Provo City* v. *Denver & Rio Grande Western R. Co.*, 156 F.2d 710; and that, therefore, the railroad may not now bring these matters before the commission since they have already been litigated. A reading of the decision of the Circuit Court of Appeals convinces us that the issues involved in this proceeding were not considered and determined in that action. There is no issue of res judicata in the present matter.

The alternative writ of prohibition is hereby denied. Costs to defendants.

PRATT, C. J., and WADE, WOLFE, and McDONOUGH, JJ., concur.